with 24-6124 of Lamley and I know I'm going to pronounce the defendant's name incorrectly but aids or but counsel for appellant if you would make your appearance and proceed please may please the court my name is Craig riffle for the appellant we're here today because the court dismissed this case on a 12v6 motion we all know what Womley says I'm not gonna spend my time on it I think what was interesting in Twombly Supreme Court made the statement of well stating a well-played complaint may proceed even if it strikes a savvy judge that actual proof of the facts improbable and recoveries most likely the Supreme Court followed later and Skinner talking about the fact that in the review in a 12v6 motion the court does not assess a complaint thanks legal feasibility or weigh the evidence that the trial that's exactly what the district court did in this case district court tried this case in the motion to dismiss this is a 1983 action this in in West the Atkins the Supreme Court stated that to say come under 1983 the plaintiff must do two things allege a violation of a right secured by federal law and show that the alleged deprivation was conducted under a person plaintiff has the appellant has done both now we're proceeding under 42 u.s. 1396 a it's referred to as the reasonable promise standard Medicaid talks about it says people wishing to apply for Medicaid are free to do so and the state must allow them to do so and furnish benefits with reasonable promise there are two implementing regulations that are issued here the first requires that those applications be reviewed and processed within 45 days that clearly didn't happen here in this language case at the time of following the complaint it was 181 days since she had filed her application in this Houston's case was 117 days the second implementing regulation that's an issue here is the state as the district court found the state is not free to just ask anything it wants to those Medicaid applications there are limits the regulation prohibits the agency from requiring information which is not necessary to making the eligibility determination what's really going on what's this case about what the case is about initially is whether you have a right to be heard I mean the elephant in the room is jurisdiction and and so I need to have you explain to me although it is not precedential why the reasoning of PECA does not does not apply here does not say that we don't have jurisdiction and as I see it just to cut to the trace of what my concern is I as I read your brief you say that that it's PECA is distinguishable because appellants are not asking for an injunction ordering their certification of Medicaid eligibility in the payment of Medicaid benefits but rather are questioning the process that the appellees used in its lack of conformity with federal law but but the reality is I look at paragraphs A and B of the Second Amendment complaint and they ask for exactly those things that you're not asking for I mean A and B talk about an injunction they talk about an injunction that would allow you to get benefits why isn't this why doesn't PECA map nicely onto this case okay I tried PECA and when this case was filed Miss Lamley and Miss Houston were alive that's why those paragraphs are in the complaint they died during the pendency of the complaint or during the pendency of the action now what PECA stands for is we go back to the 11th Amendment of immunity which says an individual cannot sue the state however we have the Ex Parte Young decision by the US Supreme Court that carved out an exception to that that exception is that an individual can proceed against the state if they're seeking prospective injunctive relief. Yeah and Ex Parte Young will get you past the 11th Amendment but how does that get you past Sputnis? Well the on the PECA decision what happens is the Miss Lamley and Miss Houston asked for three relief they didn't just ask for their Medicaid applications to be certified they asked for three different things they asked number one that their applications be processed timely they asked number two the second claim for relief is that the correct criteria be applied in processing those applications and then number three they asked for certification of their Medicaid benefits now because of their death the third claim goes away but the other two do not Okay let's say we agree with you I don't mean to point at you have a bad habit of doing that. I get it all the time. So if we grant a prospective injunctive relief and say Miss Lamley and Miss Houston were entitled to a timely processing a decision within 45 days and Miss E should not have been asking these irrelevant questions and we grant relief how does that help you? The Medicaid benefits I mean I assume that they want you know a prompt decision and they want relevant questions in order to facilitate something that will benefit them other than just better process they can't get Medicaid benefits to pay for a nursing home they're not in a nursing home they're deceased. Well under 1396A34 it does allow for the retroactive payment of benefits even to an estate. Yeah and that's why I was asking about prospective injunctive relief. Okay so what we are asking for the appellants are the estates and what the estates are asking for is that the applications be processed timely under the correct criteria the estates believe that if that happens that they there will be an approval for benefits the estates not asking the court to order that the state certify and and require the state to pay those benefits that's what PECA is about that's sorry I didn't mean to point at you either that's what PECA says PECA PECA was all about the only claim in PECA was a claim for certification for the retroactive payment benefits. But so if we grant prospective injunctive relief you get better process and so ideally you get retroactive benefits but that is clearly barred by the 11th Amendment. Ex parte Young involves an action against an individual officer in his or her official capacity for prospective injunctive relief. I don't know how ex parte Young would get get you past the bar under the 11th Amendment for retroactive monetary relief that seems clearly barred under the 11th Amendment. Because the court is not ordering it. I see. The court cannot order that and we have to believe if the court requires the state to process those applications correctly then the state's going to do what they should do and then they would find eligibility we don't know that this case is not about. Okay so let's say they find eligibility how do you how would can you ultimately get benefits in light of this dual bar between the 11th Amendment on retroactive monetary relief and the and the the mootness of prospective injunctive relief? Well the the 11th Amendment bars and the the court from acting to do that. Yeah. It doesn't bar the state from. Oh I see. Okay. We believe in good faith that the state will do what they're supposed to if they're asking the right questions. But the bar in the 11th Amendment bars the court from making that order. That's what PECA was about. Now as far as mootness it is not moot. There is still if the case is processed correctly and damaged and the benefits are awarded the estates are entitled to receive those benefits. So there's still an amount of controversy in this case that's still alive. What And there is no injury to an individual for what is at stake here which is ultimately you're talking about process but it's process with the endgame which you acknowledge of getting benefits. And so what what what is there is not an individual that is suffering an ongoing injury of federal law. Because PECA was awarding benefits in this particular case the ongoing injury is the estate those applications that are sitting there that are not being processed timely or in their correct criteria is affecting the estates of those individuals. The appellants in this case are the estates of the individuals. So if those if the court orders that those applications be processed correctly we believe the state will do that award those benefits which then flow to the estate. I guess what I'm struggling with and I and as I see what you're saying and correct me if I'm wrong which is essentially this case is not PECA because it's one distance removed from PECA. PECA was dealing with the actual award of benefits. In this case you're talking about process. You didn't get the process you think you're due. In your view if you were to see relief as it relates to process you would ultimately the state would do the right thing and ultimately give you benefits. That is correct. Okay well as it relates to that the question still becomes in order to have a finding of lack that process was incorrect or wrong you have to have a violation of federal law as an ongoing violation of federal law as it relates to somebody. I mean why there has to be you know you say there's a process violation but who is in a position to claim injury by virtue of process. If you say the estate I don't see how PECA would call for that. Well it is the estates but again PECA is limited to the 13th and 11th Amendment bars the court from ordering that. It doesn't bar the state from granting that. No I know I get that but but but but by at least by your own admission it's as I understand it you're acknowledging that this is one step along the road to get benefits right? That is correct. Okay and and on this particular step though you have to have some sort of perspective relief provided to you. Is that not true? That is correct. Okay and on that perspective relief that perspective relief the underpinning of that has to be an ongoing violation of federal law and that ongoing violation of federal law has to inflict a continual injury on somebody right? Correct. Okay well then the somebody in this instance as you understand it I I think as and you correct me it would be the the estates right? Correct. Okay if PECA doesn't map on to this then give me your best case that tells me why the estate in injury in this situation because the reality is the statute it speaks in terms of individuals. Okay so the estate is out the money that should have been paid on the Medicaid benefits that's the injury and the federal law that's at issue is 1396 AA 8 which requires that benefits for all eligible individuals be provided timely. Now the implementing regulation that's at issue is in 42 CFR chapter it's 435 9.07 E1 and the district court even recognized that implementing regulation and the district court even recognized that the state doesn't have an absolute right to go ask anything they want to in process of the applications. So if the perspective relief is granted as to processing the applications correctly it's our belief the state will do that award the benefits which which go to the state will do that which will go to the estate there's the ongoing claim. What's the authority which is what I asked you that would support this matter because if you're claiming PECA is inapposite and distinguishable then then there must be something that you rely on that says that the estate actually in this process can be suffering a continual injury by virtue of violation of federal law. Okay that's title 42 USC 1396 AA 34 which allows the state to recover Medicaid benefits for deceased individual. It specifically says that in that paragraph. Well that they would have been entitled to the benefits would have been awarded. The estate can get the that have been awarded. Here no benefits have been awarded. The estate can even file an application after the person's deceased. To get benefits right? Yes. Well there have been no benefits awarded that's the problem. Well but they can file an application after the person's deceased to recover benefits under that paragraph. That should have been granted. That should have been granted. All right. So we're talking about the timeline where benefits would have been granted to these three deceased people who were alive when they applied for the benefits. Yes. And they should have been granted the benefits and they would have been given money and the state is entitled to the money that they would have gotten that they didn't get. Yes and one thing that I think it's important to note the 11th Amendment immunity doesn't apply to Miss Eades. She's also a defendant. I'd like to reserve the rest of my time if I may. I'm gonna give you another minute because I'm gonna deal with this right now as it relates to Miss Eades. In your reply brief you say the issue of Miss Eades personal liability was never ruled on by the district court therefore it was improper for appellants to raise this issue on appeal and then you go on the site cases like Pacific Frontier where they did a remand. Well you have not you didn't ask for a remand in the reply brief in your opening brief you didn't make a fulsome argument regarding why you're entitled to relief as it relates to Miss Eades. So I don't understand why Miss Eades you haven't waived that. Waived the claim against Miss Eades? Absolutely because the court entered judgment whether it spoke about Miss Eades or not it entered a full judgment in favor of the defendants and so if you were going to challenge something about what the court did even the court's failure to speak about Miss Eades now was the time and the fact that you had you say it's not the proper time it is exactly the proper time so you haven't done that and and and so I don't understand why Miss Eades any claim against her is not waived. Well it wasn't ruled upon but we addressed everything that the district court ruled upon. I was referring to the 11th Amendment. The My point was that whether the district court ruled upon it or not it expressly did not say anything about Miss Eades it entered judgment and when you and when you in when you address that in your reply brief you cited cases in which in which we had ordered a remand. What I'm saying is you did not ask for a remand in the reply brief so what ground is it for us to do anything but you know please go ahead. Your honor when judgment was entered we contested the judgment that was entered so if the judgment dealt with Miss Eades liability we have we objected to that to that order being entered with that would dismiss that liability. You didn't say anything in there you didn't make an argument in the opening brief did you or did I miss it? Well we made an argument to everything that the court addressed. All right. And so if those if those rulings dismissed her liability we contested those. Okay. As I said I'll give you an additional minute when in rebuttal when we enlist or any questions from my colleagues. Thank you. All right. Thank you. Good morning your honor. May it please the court. My name is Daniel Card. I'm here on behalf of Deborah Shropshire in her official capacity and Susan Eades in her individual capacity. Your honor I'd like to begin with the the mootness argument. The PECA court was directly on point. It alleged it's been decades of constitutional law that constitutional it's constitutionally moot if the plaintiff is requesting prospective relief in an injunction and the prospective relief is no longer viable it's now impossible because the individual is dead. The PECA is not directly on point. I mean we have a footnote four which says that we will not ruminate or opine on whether the outcome would have been different in Ms. PECA's estate was the plaintiff appellant. Well we have a state here so you have to explain to me why we should nevertheless apply PECA. Because the individual to whom the Medicaid regulations and statutes are applicable is no longer living. So she can no longer be given she no longer has to go to a nursing home because she doesn't she's not alive anymore. Therefore there's no benefits to pay. I would like to address that because I don't believe that was addressed in the opening brief and I would like if if the court is going to consider that statute I believe you said 1396 AA I would like a chance for the parties to brief that specific issue if the court is so inclined about retroactive benefits and how they interact with mootness and whatnot because that wasn't fully briefed I don't believe it was brought up in the opening brief I'm certainly didn't respond to it. And and to be clear I I thought I heard opposing counsel say that the state had a legal authorization to to seek benefits that were essentially denied through through timeliness or denied through some sort of improper process there was a provision that would allow them to do that. Do you disagree with that? A provision in the in the statute? I don't I don't know the answer that because it wasn't briefed your honor. That is not a position they've taken before now is what you're saying? That is correct. Okay. It's substantively your honor if I may move on the the elements of an informal loan for to be bona fide are a few things one it has to be there has to be a loan between individuals who are not in the business of lending or providing lending money or providing credit and the repayment plan must be feasible meaning the borrower has to be able to pay it back and DHS has to know can that person pay it back in these two instances for instance the borrower in Miss Houston's case had to pay about $90,000 a year back in the Lamley case it was about $40,000 a year back that's a pretty substantial amount for any individual to pay back per year for a loan thus it would make sense then for DHS and its employees to inquire can this borrower in fact make these payments as the court is aware a separate DHS non-party employee asked five questions the plaintiffs refused to answer them Miss Eads then steps in and provides legal citations including the Rose case including the statutes including the regulations about why they are asking these specific questions for instance were they in the business of lending money that's the first element of whether it's an informal loan or not whether collateral was given well if collateral is given the borrower or their money back and perhaps the the borrower is more likely to pay them back they've got a collateral on the line every one of these have to do exactly with whether the borrower can pay back this $90,000 a year or $40,000 a year and the plaintiffs acknowledged explicitly that they didn't provide any information that would let DHS know whether it was feasible for the borrower to pay it back and I know that because it's in the email said the only possible element not answered by the note itself is the feasibility of repayment plan that's their words now that is followed up by threats of lawsuit not anything but threats of lawsuit there's no but if you look at this document or let me help you or we would like to get approved for benefits so let me tell you why it's feasible for these repayments to be done none of that happened what do we do with miss Eads in this case I'm struggling to figure out is she in this case what what what what is the implication of the posture of the briefing in this case as it relates to miss Eads I briefed it under the impression that she was still in the case and they are still trying to go at her for money damages under 1983 that's how I briefed it and understood it so I I think I even put in my brief that the jurisdictional statement was confusing to me because part of it they end at we want injunctive relief and then toward the end they said well miss Eads 11th Amendment doesn't apply to miss Eads so it was confusing to me so what I did is I just did the shotgun approach and briefed it as if miss Eads was still in the case that's it well no go ahead please well not at the district court level and not at this level as the plaintiffs provided one single case that would deny miss Eads right to absolute immunity or qualified immunity for that matter what what do we do with the fact that the district court did not address miss Eads liability what is the implication of that and and I thought it was your your contention that they had abandoned any claim against miss Eads I thought there was some language in the reply brief to that I believe what was written was it's not clear if they abandoned it but assuming they didn't here you go here's our argument against it because I wanted to make sure it was caught okay well what do we do with the fact that the district court did not address miss Eads does that is that a matter of legal significance it well not for her liability because she raised absolute immunity she raised qualified immunity and the court the district court whether they said her and she said her name or not the district court went through the analysis and what miss Eads is alleged to have done and said there was no right violated by DHS and this was through miss Eads alleged conduct therefore there was no right that miss Eads violated and as Supreme Court told in Pearson versus Calhoun it the district court doesn't have to get to do either wrong of the qualified immunity analysis in either way it sees fit a lot of times they'll go straight to whether it was clearly established law this time the district court went to was there a right actually violated and she definitively determined there was not a right actually violated they but they're all in there they're seeking as I understand it under 1983 individual liability as it relates to miss Eads that's correct okay for asking questions over email all right the only for absolute immunity they cite Mitchell versus Forsyth which for which only stood for the proposition that just because you're an attorney general United States doesn't mean you're absolutely what the court should look at is the function of the government attorney and what he or she is doing at the time of the alleged wrongdoing it's clear what miss Eads was doing she is an attorney for DHS DHS is her only client DHS was getting pushback from a lawyer for not answering feasibility questions which are really pretty straightforward and you would think would be readily available just to hand it over they didn't do that so mrs. Eads stepped in and she asked the questions and cited authority I'm sorry they take the position that in their long multiple page application for Medicaid the answers to these questions are in there they're not there's nothing in there about feasibility there's nothing in there about a lot of its transferring mineral rights and mineral deeds and bank statements but it has nothing to do with whether the borrower can actually repay this loan even if it's not true since we're here on a 12b6 can we affirm the dismissal just based on saying well the plaintiffs allegations are just not true isn't that contrary to our standard they didn't allege that they met feasibility in the complaint so you're at the answers no because that's not how it was planned they said we violated the 45-day rule and that they believe they have a right to Medicaid but they never said here is the documentation that we provided that made it possible for Jason Lamley to pay back this $90,000 loan that was never in the complaint it wasn't in the documents and it was never provided to us to this day was not provided to us let me circle back to where you began regarding PECA let's assume for the moment that there's enough there that we find PECA persuasive and that at least it would seem to me that that deals with the prospective claims what does that do with miss ease it since we're talking about her being in this case what does that do with the claims against her which are not seeking perspective relief in other words the the the logic of PECA was you're seeking perspective claims you have to have an ongoing injury you have dead folks and you can't have an ongoing injury therefore we have no jurisdiction but what does that do with the claims against miss eats where she's not seeking for they're not seeking perspective relief they're seeking damages what happens then let's assume that scenario what would happen to those claims I think PECA is an opposite to miss eats okay so PECA is only gonna going to apply to DHS or Shropshire in our official capacity so we would still have to deal with on the merits the there whether their claim has any whether their challenge appellate challenge has any viability as it relates to miss eat that's correct okay it back to the functionality it was clear what miss eats was doing she was investigating the case on behalf of the government agency and prepared preparation for administrative hearings which are allowed if they're denied Medicaid's federal lawsuits which clearly happen if Medicaid benefits are denied this is the basis for the functionality test which is absolute immunity case after case but even if she weren't absolutely immune it's clear she has qualified immunity what's what is the claim here that a lawyer for a questions related to a Medicaid application that's it that is the extent of miss EADS wrongdoing according to plaintiff is wrote an email and asked questions they never alleged that she actually denied the Medicaid benefits nor could they because she doesn't have a child she's their lawyer and by the way how is she supposed to defend the case if it goes forward is she to be how did you advise your client on these Medicaid applications surely not DHS has a right to attorney-client privilege and if we go to qualified immunity as I said the district court determined that there was no right violated so they didn't need she didn't need to go to whether it was clearly established in the district court in this court I've yet to see a case from the plaintiff that's clearly distinguishes a government agency can't ask questions over email I've not seen that I haven't seen that these specific questions are out of bounds well let me play devil's advocate she asked those questions after the 45-day period expired did she not she did is that a problem it's not what I especially for EADS because she's not the one that denied benefits okay but to answer your question there's a lot going on between those 45 days and questions for instance there was a the in Lamley the mineral interest value between DHS and the plaintiffs was finally agreed on on December 20th this December 20th 2021 which is within the 45 days in other words it's back and forth going on over the place this happens to be those five questions that right issue that was after 45 days but it wasn't radio silence we weren't sitting on our hands just waiting for something to happen in Houston the promissory note was not received they applied on 127 22 they said it's attached to exhibit as a property so what wasn't attached so we didn't get the promissory note until March 30th 2022 so the point is we weren't sitting on our hands things are happening behind the scenes but those questions may have been after the 45 days that doesn't mean nothing was happening it doesn't mean DHS wasn't preparing the application and your honors Susan eats is entitled to absolute immunity she's certainly entitled to a qualified immunity she shouldn't have been sued in the first place it is my wholehearted belief this was retribution against the lawyer they disagreed with she shouldn't have been I request respectfully an affirmation if you would add yes that works first I would say that regard I'll pick up with Missy's the I'm sorry I'm at 318 I mean now you get 15 minutes Missy's I don't take suing any other lawyer lightly she was warned multiple times the advantage I have over counsel I was as I was involved in this case all the way through let's talk about the two applicants miss Lamley was 78 years old she filed an application was 994 pages long miss Houston 627 pages and she was 98 in the applications they were told that these ladies were incapable of caring for themselves they were in a nursing home they gave the applicants gave five years worth of tax returns they gave full financial disclosures and I get a question are they in the business of loaning money what is the clearly established law that would support your 1983 claim against miss Eads 1396 a no no no no you're saying the statute itself is your clearly established we have no 10th Circuit case no I cited cases in my brief regarding her absolute and qualified immunity she does not have absolute immunity only the judiciary does well I and and I'm speaking I was speaking as it relates to qualified immunity and and if if you know what is your best case they would say that she she committed that she violated clearly okay that's fine that's fine I'll go back to you one of the other questions that was asked my personal favorite now remember they're trying to determine feasibility of the repayment so the question is what did the what did the lender do with the note what does that have to do if the borrower can repay nothing is the answer another question is what did the borrower do with the assets all these questions are simply a matter of to delay delay delay see they gain PECA that's what's happening here they're weaponizing PECA the longer they can delay the longer they can put it off then they use PECA as an excuse not to pay benefits we've heard it today have we not we've seen it in the briefs that's what's going on here that's the real battle if we can delay delay delay and I will tell you as hailing this case from beginning to end there was radio silence the 45 days came and gone when we filed an application we followed up had you guys got it do you need anything else I mean I think a thousand pages would probably cover it if they would have read the application they would have known that the borrowers the assets that were transferred under the note generated income that was two times the payment under the note could they pay that yeah well that's the problem your honor they never asked those questions the question is what's the under Rose what was the amount of the note what's the borrower's living expenses and what's the borrower's income we would we're more than happy we told them those were the under we decided Rose those are the questions we're happy to answer those questions counsel make it sounds like we were obstinate we weren't we were just trying to get the right questions trying to get what the correct questions under Rose those are the correct questions it's not all these others that have nothing to do with repayment and and who gets to make the determination whether they have to do with repayment or not well Rose did your honor this court did this court addressed feasibility in Rose v Brown that was a 2021 case it's a brief case okay they talked about repayment feasibility we're following the direction of the Tenth Circuit the Tenth Circuit in signing the Palm says those are the only three factors the amount of the loan the income and of the borrower and the expenses we beg to answer those questions but they never would let us all right counsel thank you for your arguments cases submitted thank